IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AARON O'NEAL, | ) |
| | ) No. 03 C 4028 |
| Petitioner, | ) |
| | ) |
| v. | ) Honorable Charles R. Norgle |
| | ) |
| DONALD HULICK, | ) |
| | ) |
| Respondent. | ) |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court is Aaron O'Neal's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Petitioner, Aaron O'Neal ("O'Neal"), challenges his convictions for aggravated criminal sexual assault, criminal sexual assault, aggravated unlawful restraint, and conspiracy. For the reasons stated below, the Petition is denied.

**I. BACKGROUND**

**A. Facts**

O'Neal, along with co-defendants Roger Wallace ("Wallace") and Victor Garcia ("Garcia"), were convicted of numerous crimes associated with the brutal gang-rape of an eighteen year old girl.[1] Another co-indictee, Richard Walters ("Walters"), pled guilty and was given a ten year sentence in exchange for his testimony against O'Neal, Wallace, and Garcia. O'Neal, Wallace, Garcia, and Walters will be referred to as "Defendants." O'Neal, Wallace, and

---

[1] The gruesome facts related to these brutal sexual attacks are recounted in People v. O'Neal, 688 N.E.2d 57 (Ill. 1997), and People v. O'Neal, 667 N.E.2d 516 (Ill. App. Ct. 1996).

1

Garcia were tried simultaneously in severed trials before the Circuit Court of Cook County. O'Neal and Garcia were tried before separate juries, and Wallace was tried before the Court.

The victim in this case, "S.B.," had dated Garcia for approximately one week prior to this incident. O'Neal was then the leader of a Chicago street gang named the "Insane Deuces." The other Defendants were members of the "Insane Deuces." Defendants had decided to initiate S.B. into the "Deucettes," the female branch of this gang. The initiation procedure was to consist of S.B.'s having sex with the Defendants. On June 2, 1992, without informing S.B. of their intentions, Defendants invited S.B. to Wallace's apartment in order to play "Quarters," a drinking game. After S.B. consumed five to eight shots of alcohol in a brief period of time and became intoxicated, Garcia led her to the bedroom of the apartment, and asked her whether she wanted to engage in sex. S.B. declined. Despite S.B.'s refusal, Garcia removed S.B.'s clothes and penetrated S.B.'s vagina with his penis. During this incident, S.B. screamed and insisted that Garcia stop. In response, Garcia struck S.B. several times, and told her to shut up.

After Garcia left the bedroom, O'Neal and Walters entered. O'Neal penetrated S.B.'s vagina with his penis. When S.B. screamed again, O'Neal struck her. O'Neal then instructed Walters to "get his dick out." Walters then penetrated S.B.'s mouth with his penis. O'Neal next instructed Walters to "get his money" (i.e. have intercourse) with S.B. Walters then either penetrated or touched S.B.'s vagina with his penis. Throughout this incident, S.B. was screaming and crying for O'Neal and Walters to stop.

Next, Wallace entered the bedroom and either penetrated or touched S.B.'s vagina with his penis. In order to stifle S.B.'s crying and screaming, Wallace struck S.B. Later, Defendants brought S.B. and the mattress from the bedroom into the apartment living room. O'Neal then

2

instructed Wallace to have intercourse with S.B. Wallace did so, despite S.B.'s continuing crying and screaming. Seeking to quiet S.B., Garcia put a gun to her head and informed her that if she did not shut up, he would kill her. At this point, Wallace penetrated S.B.'s mouth with his penis.

At the conclusion of this incident, Defendants discussed whether they should kill S.B. Apparently deciding this question affirmatively, Garcia and Wallace attempted to strangle S.B. with a plastic belt. S.B. fell unconscious and urinated. The belt broke, however, and S.B. survived. The next morning, Defendants released S.B., after instructing her not to tell the police or her parents what had occurred. Defendants had concocted a false story for S.B. to tell that would explain S.B.'s injuries without implicating the Defendants. S.B., however, informed her friend, her mother, the police, and hospital emergency personnel of the actual chain of events. Defendants were arrested shortly thereafter, and charged with numerous crimes, including aggravated criminal sexual assault, criminal sexual assault, aggravated unlawful restraint, aggravated battery, armed violence, compelling organizational membership, and conspiracy.

## B. Procedural History

At trial, O'Neal testified that he left Wallace's apartment with another man at approximately 8:30 P.M., before S.B. was attacked. Despite this testimony, O'Neal was convicted of aggravated criminal sexual assault, criminal sexual assault, aggravated unlawful restraint, and conspiracy. He was sentenced to a total of sixty years imprisonment. These sentences were vacated on appeal, and the Illinois Supreme Court affirmed in part and reversed in part, and remanded the case for further proceedings. The Circuit Court ultimately resentenced O'Neal to sixty-four years imprisonment. The Illinois Appellate Court affirmed, and the Illinois Supreme Court denied O'Neal's Petition for leave to appeal.

3

O'Neal then filed a pro-se Petition for post-conviction relief in the Circuit Court. This initial Petition was denied. O'Neal then filed an amended Petition, which was also denied. However, because the Circuit Court had not ruled within the required ninety day time period, the Appellate Court remanded the case. See § 122-2.1(a) of the Illinois Post-Conviction Hearing Act. O'Neal, represented by counsel, then filed another post-conviction Petition. The Circuit Court dismissed this Petition, and the Appellate Court affirmed. O'Neal's Petition for leave to appeal to the Illinois Supreme Court was then denied.

Following this lengthy procedural background, during which O'Neal enjoyed numerous chances to present his claims for relief to various Illinois courts, including the Illinois Supreme Court, O'Neal filed the instant Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. O'Neal filed this Petition on June 12, 2003. The Petition is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

O'Neal's Petition is governed by 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which sets a high hurdle for habeas relief. The statute states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>     (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's decision is *contrary to* clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." Owens v. Frank, 394 F.3d 490, 496 (7th Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court's decision is an *unreasonable application* of clearly established Supreme Court law if the state court "identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 529 U.S. at 407; see also Owens, 394 F.3d at 496. In order for a state court decision to be considered "unreasonable" under this standard it must be more than incorrect, it must lie "well outside the boundaries of permissible differences of opinion." Hardaway v. Young, 302 F.3d 757, 762 (7th Cir. 2002); see also Schultz v. Page, 313 F.3d 1010, 1015 (7th Cir. 2002) ("The state court decision is reasonable if it is minimally consistent with the facts and circumstances of the case").

Before reviewing the Illinois courts' decisions, however, the court must determine whether O'Neal fairly presented his federal claims to the state courts. Section 2254 requires a habeas petitioner to exhaust the remedies available in state court prior to pursuing federal habeas relief. See 28 U.S.C. § 2254(b)(1)(A). Any claim not presented to the state's highest court is deemed procedurally defaulted. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999) (indicating that "a petition for discretionary review in Illinois' Supreme Court is a normal, simple, and established part of the State's appellate review process").

5

In addition to exhausting the remedies available in state court, a habeas petitioner is procedurally barred from raising claims in a federal habeas court that he did not raise in the state court proceedings. See O'Sullivan, 526 U.S. at 848 (holding that a petitioner's failure to present three claims to the Illinois Supreme Court for discretionary review resulted in a procedural default of those claims). Fair presentment of a constitutional claim requires a habeas petitioner to present both the operative facts and the controlling legal principles to the state court before bringing the claims to a federal habeas court. Cf. Rodriguez v. Scillia, 193 F.3d 913, 916 (7th Cir. 1999) (discussing exhaustion of claim) (citing Picard v. Connor, 404 U.S. 270, 277 (1971)). Thus, a habeas petitioner procedurally defaults, or waives, any claim raised for the first time in federal court.

Also, federal habeas courts cannot review claims that the state court has disposed of on state law grounds. See Stewart v. Smith, 536 U.S. 846, 860 (2002); see also Lambrix v. Singletary, 520 U.S. 518, 523-24 (1997) (noting that where "the state law determination is sufficient to sustain the decree, any opinion . . . on the federal question would be purely advisory.") (citing Herb v. Pitcairn, 324 U.S. 117, 125-26 (1945)). Put another way, federal habeas relief is not available if the state court decision rests on state law that "is independent of the federal question and adequate to support the judgment." See Coleman v. Thompson, 501 U.S. 722, 729 (1991). For example, waiver under state law is an independent and adequate state law ground for dismissal that can preclude federal habeas relief. Thus, when a state court determines that a habeas petitioner waives a claim in state court, that waiver is an independent and adequate state law determination that bars federal habeas relief. See Harris v. Reed, 489 U.S. 255, 258 (1989) (citing Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977)); see also Wright

v. Walls, 288 F.3d 937, 947 (7th Cir. 2002) (waiver is an independent and adequate state ground in Illinois); Patrasso v. Nelson, 121 F.3d 297, 301-02 (7th Cir. 1997) (comparing waiver and res judicata under Illinois law, and the consequences of each on subsequent federal habeas review). However, for waiver to bar federal habeas review, the last state court to consider the question must have "actually relied on procedural default as the basis for its decision." Braun v. Powell, 227 F.3d 908, 912 (7th Cir. 2000). If that is not so, the merits of the issue are preserved for federal habeas review. See id.

A federal court may not grant habeas relief on a defaulted claim unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. See Edwards v. Carpenter, 529 U.S. 446, 450-52 (2000); Coleman, 501 U.S. at 750; Anderson v. Cowen, 227 F.3d 893, 899 (7th Cir. 2000). With the above principles in mind, the court examines O'Neal's Petition.

## B. O'Neal's Claims for Relief under 28 U.S.C. § 2254

O'Neal raises a total of four claims for relief under § 2254. The first three of these claims focus on whether he was afforded effective assistance of counsel at various stages of his state court proceedings. O'Neal asserts that his counsel was constitutionally ineffective (1) at trial, (2) on appeal, and (3) during collateral state post-conviction petition proceedings. Finally (4), O'Neal asserts that the consecutive sentences he received were predicated on an Illinois statute that is unconstitutional. The court has determined that O'Neal has properly exhausted his available remedies in the Illinois state court system. The court also has determined that O'Neal has, in one form or another, presented these claims to the state court system. The court will therefore address O'Neal's claims on their merits.

7

### *1. Ineffective assistance of counsel at trial*

In order to establish that his trial counsel was ineffective, O'Neal must "show that [his] counsel's performance was deficient, and that the deficiency prejudiced [his] defense." See Wiggins v. Smith, 539 U.S. 510, 521 (2003) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). An attorney's performance is deficient if it falls "below an objective standard of reasonableness." Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688). Prejudice is established by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Benefiel v. Davis, 357 F.3d 655, 662 (7th Cir. 2004) (quoting Strickland, 466 U.S. at 694).

O'Neal asserts that his counsel's performance at trial was ineffective for the following two reasons. First, counsel failed to investigate an alibi witness, and failed to properly present that witness at trial. Second, counsel failed to object to the State's cross-examination of a defense witness.

When a court reviews an ineffective assistance of counsel claim, the court's review is "highly deferential" to the attorney, "with the underlying assumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Holman, 314 F.3d 837, 840 (7th Cir. 2002) (quoting Strickland, 466 U.S. at 689). There is therefore a strong presumption that O'Neal's counsel at trial performed reasonably. See Strickland, 466 U.S. at 690; see also Cooper v. United States, 378 F.3d 638, 641 (7th Cir. 2004). To succeed in his claim, O'Neal must show "errors so serious that counsel was not functioning as the 'counsel' guaranteed [to him] by the Sixth Amendment . . . ." See Holman, 314 F.3d at 839 (quoting Strickland, 466 U.S. at 687).

8

O'Neal first asserts that counsel's failure to conduct a proper and timely investigation into an alibi witness (which ultimately resulted in this witness' testimony being barred by the trial court) constitutes ineffective assistance of counsel. O'Neal asserts that the following chain of events occurred. In his written answer to the State's discovery motion, filed March 2, 1993, O'Neal's attorney failed to include Candalario Dingilio ("Dingilio") as an alibi witness. On October 27, 1993, the day of jury selection, O'Neal's attorney informed the State that he intended to call Dingilio as a defense witness. O'Neal's attorney asserted that due to his limited resources, and the time constraints of an impending trial, he had not been able to locate Dingilio, but that O'Neal's brother had recently found Dingilio. The State then moved the trial court to bar defense counsel from calling Dingilio, based on counsel's failure to give proper notice to the State as to this witness. The court granted the State's motion. The jury therefore never heard from Dingilio, who was prepared to testify that he saw O'Neal in Wallace's apartment at some point after 6:00 P.M. on the night in question, that S.B. was then in a happy and healthy state, that he left with O'Neal five minutes later, and that he and O'Neal proceeded to visit O'Neal's girlfriend Ivette Cosme ("Cosme"), then went to the Brickyard Mall, and then to Romeoville, Illinois. See Pet.'s Ex. R.

In rare cases, an attorney's failure to investigate or call certain witnesses can constitute ineffective assistance of counsel. See Hampton v. Leibach, 347 F.3d 219 (7th Cir. 2003); Sullivan v. Fairman, 819 F. 2d 1382, 1390 (7th Cir. 1987). It is arguable that counsel's failure to timely investigate and locate Dingilio, and to timely inform the State of this witness, may have constituted ineffective assistance of counsel if Dingilio was the only alibi witness available.

9

O'Neal then asserts that counsel's failure to object to the State's cross-examination of Cosme also constitutes ineffective assistance of counsel. O'Neal argues that counsel should have objected to the State's questioning of Cosme regarding whether O'Neal was ever physically abusive towards her.

The court finds that neither of O'Neal's assertions suggests that defense counsel's performance was objectively unreasonable. See Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688). As to O'Neal's assertion regarding counsel's failure to investigate and present the alibi witness Dingilio, the court notes that counsel did present an alibi defense. Cosme testified for the defense, and explained to the jury that O'Neal came to her house at 9:00 P.M. during the night in question. People v. O'Neal, 667 N.E.2d 516, 522 (Ill. Appt. Ct. 1996). Moreover, O'Neal himself took the stand and testified that (1) while he was at Wallace's apartment, nothing was done to S.B., (2) at about 8:30 that night, a man came looking for O'Neal, and O'Neal and the man left together, (3) that O'Neal and the man then went to Cosme's house, then to a shopping mall, then to Romeoville, where O'Neal stayed for two days. Id. Dingilio's testimony would have placed Dingilio in the apartment for about five minutes, from sometime after 6:00 P.M., until he left five minutes later with O'Neal. However, O'Neal's testimony was that he left the apartment with a man at approximately 8:30 P.M. As to O'Neal's assertion regarding counsel's failure to object to the State's cross-examination of Cosme, this decision may properly be understood as a tactical decision by counsel. The court is reluctant to engage in second guessing, or "Monday morning quarterbacking," regarding counsel's strategic decisions in this case. See Harris v. Reed, 894 F.2d 871, 877 (7th Cir. 1990). There is thus no indication that defense counsel "was not functioning as the 'counsel' guaranteed [to O'Neal] by

the Sixth Amendment . . . ." See Holman, 314 F.3d at 839 (quoting Strickland, 466 U.S. at 687). The court has therefore dispositively determined that defense counsel's performance was objectively reasonable under the Strickland standard.

However, even if counsel's performance was objectively unreasonable, there was no prejudice to O'Neal. See Benefiel, 357 F.3d at 662 (quoting Strickland, 466 U.S. at 694). The evidence presented against O'Neal at trial was overwhelming. The State's evidence against O'Neal included the following. S.B. testified that O'Neal was a member of the "Insane Deuces," that O'Neal was present at Wallace's apartment where he and the other Defendants played drinking games with S.B., that O'Neal entered the bedroom after Garcia had raped her, and that the next morning O'Neal would not allow her to leave the apartment. O'Neal, 667 N.E.2d at 518. A statement of Garcia's that was published to the jury indicated that O'Neal participated in forming the plan to assault S.B., that O'Neal and Walters entered the bedroom, and that S.B. screamed and cried and told them to stop for forty-five minutes while they were in the bedroom, that O'Neal attempted to put his penis in S.B.'s mouth when S.B. was in the living room, and that O'Neal struck S.B. Id. at 519. Patrick Walsh, a gang crimes specialist with the Chicago Police Department, testified that O'Neal was the leader of the "Insane Deuces." Id. at 520. Walters testified that O'Neal participated in the plan to assault S.B., that O'Neal had intercourse with and struck S.B., that O'Neal, in his capacity as leader of the "Insane Deuces," ordered Walters to have intercourse with S.B., and that O'Neal discussed killing S.B. Id. Wallace testified that O'Neal, again in his capacity as leader of the "Insane Deuces," forced Wallace at gunpoint to have sex with S.B. Id. at 521. Given the weight of this evidence, the court is not convinced that, even if defense counsel's performance was objectively unreasonable, the result of

O'Neal's trial would have been different. See Benefiel, 357 F.3d at 662 (quoting Strickland, 466 U.S. at 694).

Trial counsel's performance was thus not objectively unreasonable, see Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688), nor did it prejudice O'Neal. See Benefiel, 357 F.3d at 662 (quoting Strickland, 466 U.S. at 694). The court therefore finds that trial counsel's performance was not constitutionally ineffective.

### 2. *Ineffective assistance of counsel on appeal*

"The Sixth Amendment right of effective assistance of counsel applies to a criminal defendant's trial, sentencing, and the first appeal of right." Jones v. Welborn, 877 F. Supp. 1214, 1219 (S.D. Ill. 1994) (citing Pennsylvania v. Finley, 481 U.S. 551 (1987)). The familiar Strickland standard therefore applies to defense counsel's performance both at trial, and on direct appeal. See Lee v. Davis, 328 F.3d 896, 900 (7th Cir. 2003); Winters v. Miller, 274 F.3d 1161, 1167 (7th Cir. 2001). Appellate counsel's performance is objectively unreasonable "if counsel fails to appeal an issue that is both obvious and clearly stronger than the one that was raised." Winters, 274 F.3d at 1167. Prejudice is established where failing to raise such an issue "'may have resulted in a reversal of the conviction, or an order for a new trial.'" Id. (quoting Mason v. Hanks, 97 F.3d 887, 893 (7th Cir. 1996)); see also Lee, 328 F.3d at 900.

On appeal, Defendants, including O'Neal, raised the following issues: whether a prior consistent statement was properly admitted, whether Dingilio's alibi testimony was properly excluded, whether testimony implicating Defendants as gang members was properly admitted, whether the State's closing argument was improper, and the propriety of their convictions and sentences. O'Neal, 667 N.E.2d at 517. O'Neal now asserts that his appellate counsel was

constitutionally ineffective for failing to raise the following issues: whether trial counsel was constitutionally ineffective for failing to give the State proper notice of Dingilio as an alibi witness, whether the trial court's evidentiary ruling barring defense counsel from cross-examining S.B. regarding letters she had written to Garcia was proper, whether the State's cross-examination of Cosme was proper, and whether the totality of the evidence was sufficient to convict O'Neal.

Appellate counsel's performance was objectively unreasonable in this case only if counsel failed to raise issues that were "both obvious and clearly stronger than the one[s] that [were] raised." Winters, 274 F.3d at 1167. Here, appellate counsel raised a number of issues that were meritorious enough to convince the Illinois Appellate Court to reverse in part, vacate all of Defendants' sentences, and remand for resentencing. O'Neal, 667 N.E.2d at 517. In fact, the issue of whether the Defendants' sentences were proper under Illinois law was deemed so important that the Illinois Supreme Court granted leave to appeal, and ultimately reversed the Appellate Court in part. O'Neal, 688 N.E.2d at 66. Given that the Illinois Supreme Court thought some of the issues raised by appellate counsel important enough to review, this court cannot say that appellate counsel failed to raise issues "both obvious and clearly stronger than the one[s] that [were] raised." See Winters, 274 F.3d at 1167. Appellate counsel's performance was therefore not objectively unreasonable. Id. Even if appellate counsel's performance was somehow objectively unreasonable, given the overwhelming evidence presented against O'Neal at trial, the court cannot say that had appellate counsel presented the issues O'Neal now raises, O'Neal's conviction would have been reversed, or a new trial would have been granted. See id. (quoting Mason, 97 F.3d at 893); see also Lee, 328 F.3d at 900. The court therefore finds that appellate counsel's performance was not constitutionally ineffective.

13

### 3. Ineffective assistance of counsel during collateral state post-conviction proceedings

In addition to asserting that his counsel was ineffective at trial and on appeal, O'Neal asserts that his counsel was ineffective during post-conviction proceedings. However, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding under section 2254." 28 U.S.C. § 2254(i); see also Szabo v. Walls, 313 F.3d 392, 397 (7th Cir. 2002). O'Neal's claim that his counsel was constitutionally ineffective during state post-conviction proceedings therefore fails.

### 4. Sentence based on an unconstitutional statute

Finally, O'Neal asserts that his sentences were based on an Illinois statute that is unconstitutional. O'Neal does not indicate whether he is referring to the United States Constitution, or the Illinois Constitution.

O'Neal may be referring to the United States Constitution, and asserting that his sentence violates the rule stated in Apprendi v. New Jersey, 530 U.S. 466 (2000), as he did in his second state post-conviction appeal. See Pet.'s Ex. S. Apprendi and United States v. Booker, 125 S. Ct. 738 (2005) both held that the Sixth Amendment right to trial by jury requires that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." If this is O'Neal's claim, it must fail. The Seventh Circuit has held that Apprendi "does not disturb sentences that became final before June 26, 2000, the date of its release." United States v. Curtis, 294 F.3d 841, 844 (7th Cir. 2002); see also Lambert v. McBride, 365 F.3d 557, 562 (7th Cir. 2004). The Seventh Circuit has also held that Booker "does not apply retroactively to criminal cases that became final before its

14

release on January 12, 2005." McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005); see also United States v. Paladino, 401 F.3d 471, 481 (7th Cir. 2005). O'Neal's sentence became final on May 31, 2000, when his Petition for Leave to Appeal was denied by the Illinois Supreme Court. See Pet.'s Ex. L. O'Neal's Apprendi/Booker claim (if, indeed, he is making one) is therefore barred under the rules explained in Curtis, 294 F.3d at 844 and McReynolds, 397 F.3d at 481.

O'Neal may, however, be asserting, as he did on direct appeal, that his sentences violate the Illinois Constitution. See Pet.'s Ex. A. If indeed this is O'Neal's assertion, it must fail in his § 2254 Petition. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Dellinger v. Brown, 301 F.3d 758, 764 (7th Cir. 2002) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).

### III. CONCLUSION

For the foregoing reasons, the court finds that no Illinois state court adjudication in this case "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law," or "resulted in a decision that was based on an unreasonable determination of the facts . . . ." See 28 U.S.C. § 2254(d). O'Neal's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody is therefore denied.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 7-5-05